**Patricia BOALS, Plaintiff, Appellant and Cross-Respondent,**

v.

**Jack Michael BOALS, Defendant, Respondent and Cross-Appellant.**

**Nos. 18172, 18187.**

Supreme Court of Utah.

May 18, 1983.

B.L. Dart, Salt Lake City, for Patricia Boals.

David S. Dolowitz, Salt Lake City, for Jack Michael Boals.

HALL, Chief Justice:

The decree of divorce in this case placed the minor child of the parties in the temporary custody of the defendant father for a period of eighteen months. Both parties filed appeals, which have since been consolidated. Plaintiff challenges the custody award as not being supported by adequate findings of fact, while defendant asserts error in not adjudging permanent custody in him. He also challenges the propriety of the alimony award to plaintiff.

The evidence at trial viewed in the light most favorable to the judgment of the trial court was that defendant had an open, loving, spontaneous and warm relationship with the child not enjoyed by plaintiff, whose relationship was more distant and less spontaneous or affectionate.

When both parents arrived home from work, plaintiff would proceed to care for her own needs, while defendant would assume the responsibility of meeting the needs of the child. He consistently provided the primary care of the child, changing, feeding and entertaining her, and from that close contact their relationship grew. Plaintiff played a much smaller role in the activities, and on weekends, plaintiff usually slept in, while defendant arose and cared for the child.

Plaintiff experienced a series of extramarital affairs, which caused the marriage to disintegrate. Defendant also admitted a single act of infidelity two years prior, "brought on" by plaintiff's admission of an extramarital affair she had gone through.

The parties had agreed upon the establishment of an educational fund for their child, but at the time of the divorce plaintiff insisted that it be divided between the parties rather than being retained for the child.

Defendant had been employed as a salesman for the past fourteen years and intended to continue that employment, which gave him a very flexible schedule and permitted him to be at home every night, with the exception of a trip to Rock Springs, Wyoming, every six weeks.

Plaintiff earned $8,600 from part-time employment in 1980. She had a fellowship from Houston University, which required three days of classwork each week and which paid her from $5,000 to $7,000. She also had part-time work at $6 to $8 per hour.

The trial concluded on October 26, 1981, and on November 3, 1981, the trial judge filed a memorandum decision, which reads in pertinent part as follows:

7. The court recognizes that the main controversy in this case is the custody of the child, Nicole Marie, now nearing two years of age. The court finds that both parents are fit and proper parties to serve as custodial parent[s]. However, what should be done under the existing facts and circumstances for the best interest of the child is of controlling importance to the court. Plaintiff has elected to return to college for further studies and is now enrolled at a university in Houston, Texas. She contemplates it will take her three years to complete her studies for the degree she now seeks. Her circumstances are such that she will have to seek employment while attending the university. Such employment, coupled with attendance and study at the school will require a substantial portion of her time. The court recognizes that defendant's employment responsibilities will require s [sic] substantial portion of his time and each will have to rely upon the services of baby sitters [sic]. The existing circumstances suggest that defendant is in a position to best furnish that care while plaintiff is purusing [sic] her studies. A child custody evaluation supports that conclusion. I thus award temporary custody of the child, Nicole Marie, to the defendant while plaintiff is pursuing her studies, reserving to the plaintiff the right to bring the question of final custody before the court upon termination of her attendance at any university. Such change of custody is to be effected during the Christmas holiday season in December, 1981, pending which defendant is to pay plaintiff $300.00 per month child support during that period of time.

\*　　\*　　\*　　\*　　\*　　\*

10. Plaintiff is awarded $300.00 per month as alimony during the period he has custody of the child with the court to review the matter of alimony and make such decision with respect thereto as it deems just at the time the question of permanent custody of the child is determined.

Upon receipt of the judge's memorandum decision, both parties moved to modify the order of custody. Following hearing and argument on the respective motions, in a second memorandum decision dated December 8, 1981, the judge further ruled in pertinent part as follows:

Defendant moved to modify the decision as to change of custody at the end of December, 1981, because of plaintiff's alleged refusal to allow defendant to communicate with the child and the allegation she had commenced to live with another man. Plaintiff's motion to alter the decision with respect to custody was based upon the fact that since receipt of the court's memorandum decision regarding custody, she had withdrawn from school and was contemplating marriage with Lawrence Corcoran upon the decree becoming final. She supported her motion with an affidavit of Stephen E. Trotter, a school psychologist, to the effect that a female child should be left with the mother.

This court's decision to award temporary custody to defendant was not based solely upon plaintiff's intent to attend school and her need to seek employment. Other factors were involved which had a material bearing on that decision which I find are not altered by the withdrawal from school. However, since plaintiff's withdrawal changes the circumstances on which the three year time table for fixing permanent custody was based, temporary custody is awarded to defendant for a period of eighteen months from January 1, 1982, following which period of time plaintiff may petition the court to examine then existing circumstances and to then determine the matter of permanent custody. Thus, except as herein altered the respective motions to amend as requested are denied.

Ultimately, on December 22, 1981, the judge entered his formal findings of fact, conclusions of law and decree, which incorporated the content of his prior memorandum decision.

■ In surveying the adequacy of findings of fact and conclusions of law, this Court is of course free to consider them in the light of, and together with the prior memorandum decisions of the trial judge.[1] When this is done, it becomes abundantly clear that the judge made a commendable effort to tailor his judgment to meet the best interests of the child of the parties.

Contrary to plaintiff's assertion, the trial judge did not conclude that the parties were *equal* parents. Rather, he determined that "both parents are fit and proper parties to serve as custodial parent[s]." Notwithstanding the apparent differences in the respective parental abilities of the parties, the judge saw fit to defer his determination of permanent custody for a reasonable length of time, as it was his prerogative to do. In so doing, the judge was no doubt weighing the best interests of the child, mindful of the usually unique role played by a mother in caring for a child of tender years.[2]

■ Concededly, the trial judge's findings of fact are meager and it would have been advisable for him to have set forth his findings in greater detail. However, this being a matter of equity, it is the prerogative of this Court to review questions of both law and fact.[3] Consistent with that prerogative, we are not wholly bound and limited by the findings of fact made by the trial judge. Moreover, we may make findings of fact of our own.[4]

■ The evidence presented at trial and upon the subsequent motions to modify the decree adequately supports the judgment of the trial judge. It was reasonable and well within his discretion to conclude under the conditions and circumstances then existing that an award of temporary custody to defendant would best serve the interests of the minor child.[5] The defendant had stability in his home and work, and he had demonstrated an exceptional ability to care for the various needs of the child. In contrast, plaintiff had embarked upon a further course of educational study, was required to work part-time and was in need of financial assistance by way of alimony to attain her goal. Upon completion of her graduate study, it was of course foreseeable that her circumstances might then well dictate an award of permanent custody to her.

The fact that plaintiff chose to terminate her enrollment at Houston University and to enter into a new marriage did not necessarily lend stability to her life nor enhance her ability to best care for the needs of her child. In fact, because of this sudden change of events, we deem it to have been particularly prudent for the trial judge not to precipitously modify his order. Instead, in his wisdom, he reduced the time frame of the award of temporary custody to eighteen months so as to let the dust settle and to permit the situation to jell before he determined the issue of permanent custody.

■ By the terms of the decree, the period of temporary custody runs through June 30, 1983, at which time "plaintiff may petition the court to examine then existing circumstances and to then determine the matter of permanent custody." Assuming each party remains fit and proper to serve as the custodial parent, in order for plaintiff to be successful in seeking custody she need not make a showing of changed circumstances in the usual sense that is required to modify an order of *permanent* custody.[6] She need only make a showing that an award of custody to her would best serve the interests of the child.

■ In regard to the award of temporary alimony, should plaintiff in fact enter into the new marriage, the obligation would

---

1. *Sprague v. Boyles Bros. Drilling Co.,* 4 Utah 2d 344, 294 P.2d 689 (1956).

2. *Cox v. Cox,* Utah, 532 P.2d 994 (1975); *Steiger v. Steiger,* 4 Utah 2d 273, 293 P.2d 418 (1956).

3. Constitution of Utah, Article VIII, § 9.

4. *Wiese v. Wiese,* 24 Utah 2d 236, 469 P.2d 504 (1970).

5. U.C.A., 1953, § 30–3–5.

6. *Id.*

cease. In the event she should not, the award is deemed warranted in order to assist plaintiff in making the financial adjustment necessary as the result of the divorce.

The judgment of the trial judge is affirmed, the parties to bear their own costs of appeal.

STEWART, OAKS and HOWE, JJ., concur.

DURHAM, Justice (concurring in result):

I concur with the result of the majority opinion, which essentially preserves the status quo and disadvantages neither party vis-a-vis the custody hearing (which may be scheduled within weeks of our decision because of the time it has required to process this appeal), but I cannot join its rationale. The majority opinion suggests that the "temporary" custody order originally of three-years' duration, later modified to eighteen months, was reasonable and in the best interests of a child who was approximately two years old at the time of the original order. There are no findings by the trial court, nor anything in the record in this case, which support the proposition that such a "temporary" order was reasonable and in the child's best interest. The original three-year order might possibly have been sustained on the theory that one parent would complete a re-education process in that period, but the arbitrary eighteen-month reduction appears in no way related to the child's interests. Such an unusual and potentially disruptive protraction of the period of time in which a very young child's permanent custody remains undecided and uncertain is, in my view, extremely unwise as a general rule. To be sustained, such an order should be supported by extensive evidence and explicit findings. Such evidence and such findings do not exist in this case.

I also note without further discussion my inability to join in the majority opinion's affirmative reference in footnote 2 to the rule of preference for mothers of young children in disputed custody cases where all other things are equal. Since the majority opinion determines the rule to be inapplica-

ble in this case, I will reserve discussion of its merits for a future case in which they must be reached.