**Kirk Randall ERWIN, Plaintiff and Respondent,**

v.

**Valerie Ann ERWIN, Defendants and Appellants.**

**No. 870570–CA.**

Court of Appeals of Utah.

May 12, 1989.

P. Gary Ferrero, Salt Lake City, for defendants and appellants.

Joane P. White, Price, for plaintiff and respondent.

Before DAVIDSON, NEWEY[1] and ORME, JJ.

## OPINION

ROBERT L. NEWEY, Senior Juvenile Court Judge:

Defendant Valerie Erwin appeals from a divorce decree awarding custody of her children to their father, Plaintiff Kirk Randall Erwin, and effecting a division of marital property. We affirm in relation to custody and visitation and reverse and remand the property division.

The parties were married in December of 1973, but developed marital difficulties which seem to have become acute in 1986, after the family had moved to Arizona in conjunction with Kirk Erwin's work as a construction contractor. The parties separated, and Kirk Erwin returned to the former family home in Green River, Utah, with three of the children.

The parties have four children who were from 12 to 3 years of age as of the time of their divorce on October 19, 1987. On February 3, 1987, the parties stipulated to an order temporarily placing the two oldest in the custody of Kirk Erwin and the two youngest children in the custody of Valerie Erwin on the condition that she reside in her mother's home. A custody evaluation dated May 19, 1987 recommended that final custody be split between the parents, with Kirk Erwin having custody of the oldest child and Valerie Erwin custody of the three others.

In July of 1987, Valerie Erwin moved from Green River to Price with her mother and the two youngest children. That same month, her mother moved out and her boyfriend, whom she had known for six weeks, moved into the home with her and her two youngest children. Instead of attending the College of Eastern Utah in Price, as she had previously contemplated, Valerie Erwin went to work for a grocery store, leaving the children in the care of her unemployed boyfriend. In August of 1987, a month before trial, Valerie Erwin quit her grocery store job and moved to Salt Lake City with her two children and boyfriend, where both she and her boyfriend were unemployed.

Following trial, the trial court awarded custody of all of the children to their father. In making its decision, the court perceived a degree of instability in the children's mother and noted an earlier lack of supervision. From the end of October until mid-December 1986, while Valerie Erwin remained in Arizona, she frequently left her five-year-old daughter unattended during the daytime and alone at night while she visited a boyfriend.

The court also noted that the oldest child (age 12) has emotionally distanced himself from his mother and refused to have any contact with her. The court also found significant the fact that Valerie had relocated to Salt Lake City and was unemployed, whereas Kirk continues to live in Green River next door to his parents in the home in which the children have lived most of their lives. In awarding custody to the father, the court specified reasonable visitation to the mother of at least one weekend per month and certain holidays. The court also inventoried and valued the marital property, and divided it about evenly between the parties, based on the net values of the assets and the debts which the husband alone was ordered to pay.[2]

Valerie Erwin appeals from the decree, challenging the sufficiency of the trial court's findings and claiming abuses of discretion in awarding custody and visitation and in dividing the marital property. We turn first to the question of the sufficiency of the findings.

In cases tried to the bench, the court is required to "find the facts special-

---

1. Robert L. Newey, Senior Juvenile Court Judge, sitting by special appointment pursuant to Utah Code Ann. section 78-3-24(1)(j) (1987).

2. Valerie argues that the property distribution was disproportionate, but her argument is based on asset values alone, without taking into ac-count liens, encumbrances, debts, Kirk's partner's interest, etc. The net values of the assets, listed in Addendum B to the Respondent's Brief, are a more appropriate basis for analyzing the property disposition.

ly," [3] and thus ground its decision on findings of fact which resolve the material factual uncertainties and are expressed in enough detail to enable a reviewing court to determine whether they are clearly erroneous.[4] In assessing the sufficiency of the findings, however, we are not confined to the contents of a particular document entitled "Findings"; rather, the findings may be expressed orally from the bench or contained in other documents,[5] such as the quite thorough memorandum decision of the trial court in this case. Viewing the findings from the various sources in the record, there appears to be ample factual support for the conclusions reached by the trial court. The findings providing that support do not appear to be clearly erroneous.

■ Valerie Erwin further argues that the trial court abused its discretion in awarding custody of all of the children to Kirk Erwin. Our review of custody decisions is, however, limited. Statute requires that the trial court decide the question of custody according to "the best interests of the child and the past conduct and demonstrated moral standards of each of the parties." [6] Beyond that rather indeterminate

mandate, we accord broad discretion to the trial court so that it may use its first-hand proximity to the parties to resolve the delicate and highly personal problems presented in custody disputes.[7]

In this case, the trial court appropriately considered the personal and emotional qualities and stability of the potential custodians; [8] their relative abilities to provide care, supervision, and a suitable environment for the children; [9] and the value of maintaining the established custodial relations and environment.[10] The court appropriately sought to keep the children together and thereby foster sibling bonds,[11] which would have been disrupted had the mother been awarded custody, since she did not seek custody of the oldest child. The court also took into consideration, as a relevant but not controlling factor, the mother's open cohabitation and potential related effects on the children.[12] It therefore appears that the trial court considered "the best interests of the child[ren] and past conduct and demonstrated moral standards of the parties" and did not abuse its discretion in awarding custody of the children to their father with reasonable visitation by their mother.[13]

3. Utah R.Civ.P. 52(a).

4. *Action v. Deliran,* 737 P.2d 996, 999 (Utah 1987); *Smith v. Smith,* 726 P.2d 423, 426 (Utah 1986); *Kelly v. Draney,* 754 P.2d 92, 95 (Utah App.1988); *Painter v. Painter,* 752 P.2d 907, 909 (Utah App.1988).

5. Utah R.Civ.P. 52(a) ("It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence or appear in an opinion or memorandum of decision filed by the court."); *See Hansen v. Hansen,* 736 P.2d 1055, 1058 (Utah Ct.App.1987).

6. Utah Code Annotated 30–3–10 (1984).

7. *See Jorgensen v. Jorgensen,* 599 P.2d 510, 511–12 (Utah 1979).

8. *See Sanderson v. Tryon,* 739 P.2d 623 (Utah 1987); *Hutchison v. Hutchison,* 649 P.2d 38, 41 (Utah 1982); *Kallas v. Kallas,* 614 P.2d 641 (Utah 1980).

9. *See Davis v. Davis,* 749 P.2d 647, 648–49 (Utah 1988); *Wall v. Wall,* 700 P.2d 1124 (Utah 1985).

10. *Hirsch v. Hirsch,* 725 P.2d 1320 (Utah 1986); *Pusey v. Pusey,* 728 P.2d 117, 120 (Utah 1986); *Hutchison v. Hutchison,* 649 P.2d 38, 40 (Utah 1982); *Nielsen v. Nielsen,* 620 P.2d 511, 512 (Utah 1980).

11. *See Hutchison v. Hutchison,* 649 P.2d 38, 41 (Utah 1982); *Jorgensen v. Jorgensen,* 599 P.2d 510 (Utah 1979) (Crockett, C.J., concurring specially); *Walton v. Coffman,* 110 Utah 1, 169 P.2d 97, 105 (1946).

12. *See Fontenot v. Fontenot,* 714 P.2d 1131, 1132 (Utah 1986) (retaining maternal custody despite cohabitation and other sexual activity); *Wall v. Wall,* 700 P.2d 1124, 1125 (Utah 1985) (custody awarded to mother despite discreet overnight visits from boyfriend; father had no steady job); *Sparks v. Sparks,* 29 Utah 2d 263, 508 P.2d 531 (1973); *Stuber v. Stuber,* 121 Utah 632, 244 P.2d 650, 652 (1952). *See also Sanderson v. Tryon,* 739 P.2d 623 (Utah 1987) (polygamy).

13. In ordering visitation, the trial court appropriately took into consideration the 378–mile round trip from Kirk Erwin's home in Green River to Valerie Erwin's home in Salt Lake City, and therefore specified a minimum of monthly weekend visits, a month in the summer, and

With regard to the property settlement, the trial court seems to have made a nearly equal division of the marital property, based on asset values as found by the court, less debts and other liabilities, and with some attention to the needs of the parties for particular items. Such a settlement would seem equitable and within the court's discretion except for one flaw. The court ordered Kirk Erwin to pay Valerie Erwin cash in a total principal amount of $12,000 in installments of $200 per month at 6% interest. However, the statute specifying that judgments bear interest at the rate of 12% [14] has recently been held to apply to monetary awards decreed in divorce proceedings. *Marchant v. Marchant,* 743 P.2d 199, 206–07 (Utah App. 1987).[15] Changing the interest rate on the cash settlement to the statutorily prescribed 12% would double the rate and greatly extend the duration of the monthly payment stream, and thus alter the balance struck by the trial court in making the property distribution, necessitating a remand.

We therefore affirm the award of sole custody to the Plaintiff Kirk Erwin and the provisions of the decree relating to visitation. We reverse and remand the portions of the trial court's decree relating to the distribution of marital property, with the direction that the interest rate be no less than the judgment rate and that the court make any resulting adjustments deemed necessary in its discretion.

DAVIDSON and ORME, JJ., concur.

---

certain holidays. This minimum does not, however, limit Valerie Erwin's right to visit the children at other reasonable times and places.

**14.** Utah Code Ann. 15–1–4 (1986).

**15.** In *Marchant,* the statutory interest rate on judgments was held applicable to a monetary property award. The court in *Marchant* relied on *Stroud v. Stroud,* 738 P.2d 649 (Utah App. 1987), a case involving a judgment for past due child support. Subsequent to *Marchant,* this court's resolution in *Stroud* was affirmed by the Utah Supreme Court. *Stroud v. Stroud,* 758 P.2d 905 (Utah 1988).